UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FRANCIS ROHIT a/k/a JASON SINGH,

                  Petitioner,

                  v.                      **MEMORANDUM AND ORDER**
                                            03-CV-01817 (SLT)(VVP)[*]

JAMES CONWAY, Superintendent, Attica
Correctional Facility,
                  Respondent.
------------------------------------------------------------------X
POHORELSKY, Magistrate Judge:

     The petitioner has consented, pursuant to 28 U.S.C. § 636(c), to my jurisdiction for

purposes of deciding this habeas petition.  (*See* Docket entry no. 7.)  In his application, the

petitioner contests the validity of a guilty plea, and also raises more traditional claims as to

ineffective assistance of counsel and other trial-based issues, including prosecutorial misconduct

and evidentiary rulings.  For the reasons discussed below, the petition is DENIED in its entirety.


## BACKGROUND

     At issue in the petition are two separate criminal matters both of which involved

burglaries and resulted in the petitioner's present confinement by state authorities.  The earlier

matter led to a guilty plea, the latter, a trial and conviction.  To the extent they are relevant in

resolving the instant petition, the court sets forth the following facts, adduced from transcripts of

the petitioner's trial and related proceedings, and from various submissions filed by the

petitioner and respondent during state court proceedings and in this court.

---

[*]This case was initially assigned to Judge Johnson and has since been reassigned to Judge
Townes.  (Docket entry no. 8.)

# I.      Arrest, Trial and Other Relevant Proceedings

In December 1998, the petitioner was arrested and, among other offenses, was charged with attempted burglary after having been found in possession of property stolen from an unoccupied apartment near the petitioner's residence. The petitioner subsequently pleaded guilty to third degree attempted burglary in connection with that incident. During the plea proceeding, the court explained to the petitioner that his guilty plea would result in a waiver of his right to prosecution by a grand jury indictment. In response to questioning from the court, the petitioner acknowledged that he understood the implications of the waiver, including its preclusive effect on proceeding by grand jury indictment, and that he signed the waiver form freely and voluntarily after having spoken to his attorney. The court then released the petitioner pending sentencing.

While awaiting sentencing for the December 1998 burglary, the petitioner was arrested in January 1999, again on a burglary-related offense.[1]  At a pretrial proceeding after the arrest, the petitioner sought to withdraw his guilty plea for the earlier burglary offense, arguing that he did not, as part of the plea proceeding, knowingly, intelligently, or voluntarily waive his right to be prosecuted by a grand jury indictment. The petitioner suggested that his plea was the product of fear and intimidation and asserted, for the first time, that he could not read or write. The court, in a written decision, denied the petitioner's motion to withdraw his guilty plea.

In October 1999, the petitioner was sentenced in connection with his guilty plea for the December 1998 burglary to an indefinite prison term of two to four years. The petitioner

---

[1]For the January 1999 offense, the petitioner was indicted on seven counts: two for second degree burglary, another two for fourth degree criminal mischief, and one each for third degree grand larceny, third degree criminal possession of stolen property, and unlawful possession of marijuana. (Respt.'s Aff. in Opp'n to Pet. ¶ 8.)

proceeded to trial on the January 1999 burglary offense, and in June 2000 was convicted of second degree burglary, third degree grand larceny, third degree criminal possession of stolen property, and fourth degree criminal mischief.  For those convictions, the state court judge sentenced the petitioner to various concurrent terms, the longest being 10 years.

## II.      Post Conviction Proceedings

In January 2000, the petitioner sought and received leave to appeal the judgment entered against him as a result of his guilty plea for the December 1998 burglary.  In his appeal, the petitioner contested the judge's denial of his motion to withdraw the guilty plea, arguing again that he did not knowingly, intelligently, and voluntarily waive his right to be prosecuted by a grand jury indictment as he could not read the waiver he signed in court.  The Second Department, in a written decision, rejected the petitioner's argument, finding the "waiver of indictment . . . knowingly, intelligently, and voluntarily executed."  *People v. Rohit*, 718 N.Y.S.2d 879 (App. Div. 2001).  The Court of Appeals denied leave to appeal.  *People v. Rohit*, 96 N.Y.2d 762 (2002).

In December 2001, the petitioner appealed his conviction on the January 1999 burglary to the Appellate Division, raising a claim of prosecutorial misconduct and contesting various evidentiary rulings by the trial court.  As to the prosecutorial misconduct claim, the petitioner argued that the prosecutor improperly (1) disclosed that the petitioner was represented by his third lawyer; (2) stated that the grand jury heard evidence before indicting the petitioner; (3) laughed and slammed papers down during counsel's cross-examination; and (4) vouched for witnesses by arguing during summation that they lacked a motive to lie.  The evidentiary objections were made in the context of a due process argument and concerned the admission of

prior crimes and hearsay evidence.  In a *pro se* supplemental brief, the petitioner raised an additional ineffective assistance claim based on his attorney's failure to file various pretrial motions.  In October 2002, the Appellate Division unanimously affirmed the conviction, *People v. Singh*, 748 N.Y.S.2d 769 (App. Div. 2002), and the Court of Appeals denied leave to appeal, *People v. Singh*, 99 N.Y.2d 563 (2002).

### III.      The Petitioner's Claims

In April 2003, the petitioner filed the instant petition, raising essentially the same claims that had been rejected by the state appellate courts.  First, the petitioner argues that his guilty plea to the December 1998 burglary offense was invalid because he did not knowingly, intelligently and voluntarily waive his right to a grand jury indictment during the course of the plea proceeding.  (Pet. ¶ 11(a).)  As to the other four claims, they are identical to those raised on direct appeal by the petitioner contesting his conviction on the 1999 burglary incident and include allegations of prosecutorial misconduct, improper evidentiary rulings on prior crimes and hearsay evidence, and ineffective assistance of counsel.  (*See id.* ¶ 11(b)-(d).)

### DISCUSSION

### I.      State Court Exhaustion

The exhaustion requirement prohibits the granting of an application for a writ of habeas corpus unless the petitioner has exhausted the remedies available in the courts of the state in which he or she was convicted, *see* 28 U.S.C § 2254(b)(1)(A); *Picard v. Connor,* 404 U.S. 270, 275 (1971); *Klein v. Harris,* 667 F.2d 274, 282 (2d Cir. 1981), and extends to every federal habeas claim alleged by the petitioner, *see Caballero v. Keane,* 42 F.3d 738, 740 (2d Cir. 1994) (citing *Rose v. Lundy*, 455 U.S. 509, 522 (1982)).  In other words, the existence of *any*

unexhausted claim in a habeas petition – a so-called "mixed petition" – requires dismissal of the entire petition. *Rose*, 455 U.S. at 522.

Proper exhaustion "requires . . . that state prisoners give state courts a *fair* opportunity to act on their claims." *O'Sullivan*, 526 U.S. at 844 (citing 28 U.S.C. § 2254(c)) (additional citations omitted). Thus, a petitioner is not deemed to have exhausted the available state remedies if he or she has the right under state law to raise, by any procedure, the question presented. 28 U.S.C. § 2254(c). This has been interpreted by the Supreme Court to require the invocation of "one complete round of the State's established appellate review process," including an application to "a state court of last resort when that court has discretionary control over its docket." *O'Sullivan*, 526 U.S. at 843, 845.

Moreover, the exhaustion requirement is not satisfied until the petitioner has "fairly presented" the federal claim to the highest court of the state. *See Picard,* 404 U.S. at 275 ("We emphasize that [for purposes of exhaustion] the federal claim must be fairly presented to the state courts."). A claim may be "fairly presented" to the state courts if "the legal basis of the claim made in state court was the 'substantial equivalent' of that of the habeas claim." *Daye*, 696 F.2d at 192 (quoting *Picard*, 404 U.S. at 278) (additional citations omitted). "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id.*

The court believes the petitioner's claims are properly exhausted in accordance with the above framework. In any event, the court need not decide the exhaustion issue since it ultimately concludes that the instant petition lacks merit and should be dismissed on that basis.

Under 28 U.S.C. § 2254(b)(2), district courts are authorized to address the merits of a habeas application, despite non-exhaustion, if the inquiry results in a denial of the petition. The Second Circuit has not yet established a standard for triggering § 2254(b)(2) review. *See Brown v. State of New York*, 374 F. Supp. 2d 314, 318 (W.D.N.Y. 2005). The majority of courts in this circuit have followed a "patently frivolous" standard, *id.* (citing *Naranjo v. Filion*, No. 02-CIV-5449, 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003) (Peck, Mag. J.) (collecting cases)) (footnote omitted), while a minority have exercised § 2254(b)(2) discretionary review when " ' it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,' " *see Hernandez v. Lord*, No. 00-CIV-2306, 2000 WL 1010975, at *4 n.8 (S.D.N.Y. Jul. 21, 2000) (Peck, Mag. J.) (collecting and analyzing cases).

Since the grounds for which the petitioner seeks habeas relief fail either standard, as they are both patently frivolous and entirely meritless, the court will proceed to address the petition on its merits.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254, requires that federal courts "entertain" applications for habeas relief "only on the ground that [a state prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The primary significance of AEDPA resides in its mandate that federal courts apply a deferential standard of review for habeas claims that have been adjudicated on the merits in state courts. *See* 28 U.S.C. § 2254(d); *see also Eze v. Senkowski*, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas

petitions of state prisoners.' ") (quoting *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir. 2001)) (additional citation omitted).

Under this narrow scope of review, a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was adjudicated on the merits in State court only if it concludes that the adjudication of the claim "resulted in a decision that was [1] contrary to, or involved an unreasonable application of, clearly established Federal law . . . or [2] resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). *Accord Rosa v. McCray*, 396 F.3d 210, 219 (2d Cir. 2005); *Castro v. Lewis*, 03-CV-5480, 2004 WL 2418319, at *2 (E.D.N.Y. Oct. 29, 2004) (Gleeson, J.) ("The Antiterrorism and Effective Death Penalty Act . . . has narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits.") (citation omitted). "A state court adjudicates a claim 'on the merits' for purposes of § 2254(d) when it '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment . . . even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.' " *Serrano v. Fischer*, 412 F.3d 292, 296 (2d Cir. 2005) (quoting *Gutierrez v. McGinnis*, 389 F.3d 300, 304 (2d Cir. 2004)).

### III.    The Merits of the Petitioner's Claims

#### A.    Waiver of Grand Jury Indictment

The petitioner advances several grounds as to why his waiver of his right to proceed by grand jury indictment, given as part of his guilty plea, was invalid, pointing to the "limited nature of the oral colloquy" that took place between the petitioner and the state court judge at the plea proceeding and his inability to read. The court finds no merit to these allegations.

As an initial matter, the law is clear that the right to a grand jury indictment, although enshrined in the Fifth Amendment of the federal Constitution, does not extend to the states by virtue of the Fourteenth Amendment. *Peters v. Kiff*, 407 U.S. 493, 496 (1972) ("[T]he Fifth Amendment right to a grand jury does not apply in a state prosecution.") (citing *Hurtado v. California*, 110 U.S. 516 (1884)); *accord People v. Iannone*, 45 N.Y.2d 589, 594 n.3 (1978) ("The right to indictment by a Grand Jury in New York is dependent solely upon our State Constitution . . . .") (citations omitted). Rather, as courts in this circuit have consistently recognized, "[t]he right to a grand jury is a matter of New York law," *Mirrer v. Smyley*, 703 F. Supp. 10, 11-12 (S.D.N.Y. 1989) (citation omitted), and claims alleging the abridgment of such a right are therefore not cognizable on habeas review, *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' ") (citation omitted); *see also Melendez v. Garvin*, 256 F. Supp. 2d 183, 185 (2003) (finding a habeas claim alleging the impropriety of a waiver to a grand jury indictment was "a question of state law alone" and "not cognizable on federal habeas review."). Indeed, in his state court appellate brief containing the same claim, the petitioner made no reference to federal constitutional principles, focusing exclusively on state statutory and constitutional law. (Petr.'s Br. 7-13, Oct. 2000.) *See, e.g.*, *Lucius v. Fillion*, 431 F. Supp. 2d 343, 347 (W.D.N.Y. 2006) (rejecting claim of irregular grand jury procedures as not cognizable on habeas review, recognizing, in part, that when the claim was presented on direct appeal, "it was framed only as a violation of New York state's constitution and statutory law.").

That does not mean, however, that the petitioner is completely without recourse here. As "the Supreme Court 'has repeatedly held . . . state statutes may create liberty interests that are

entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment.' " *Jelinek v. Costello*, 247 F. Supp. 2d 212, 278 (E.D.N.Y. 2003) (Weinstein, J.) (quoting *Vitek v. Jones*, 445 U.S. 480 (1974)); *accord Gayle v. Senkowski*, No. 02 CV 1694, 2004 WL 503796, at *4 (E.D.N.Y. Mar. 16, 2004) (Gleeson, J.). And, where such state-created rights exist, courts must ensure that they are not " 'arbitrarily abrogated.' " *Jelinek*, 247 F. Supp. 2d at 278 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)) (additional citations omitted).

The court, however, finds no such violation took place here – that is, the petitioner executed the waiver knowingly, intelligently, and voluntarily. In that regard, the court need look no further than the transcript of the plea proceeding, which evinces both a thorough inquiry by the state court judge in assessing voluntariness and a clear understanding by the petitioner of the waiver's implications:

| [THE COURT]: | Listen very carefully to me. You signed two waiver forms. On one of the waivers you have indicated to me as a result of this plea agreement that you are consenting to be prosecuted by a Superior Court information rather than to be prosecuted by an indictment that a Grand Jury would have to vote against you. [. . .] Do you understand? |
|---|---|
| [PETITIONER]: | Yes. |
| [THE COURT]: | Have you spoken to your attorney standing beside you concerning the two waiver forms that you just signed? |
| [PETITIONER]: | Yes. |
| [THE COURT]: | Do you have any questions at all concerning the legal effects of these waivers that you would like to have [your attorney] Ms. Licitra explained to you or that you would like me to explain to you? |
| [PETITIONER]: | No, sir. |

| [THE COURT]: | Are you certain that you understand that there's not going to be an indictment in this case . . . . Do you understand that? |
|---|---|
| [PETITIONER]: | Yes. |
| [THE COURT]: | And you signed these waiver forms freely and voluntarily? |
| [PETITIONER]: | Yes. |

(Plea Tr. 2:20-4:12, Dec. 22, 1998.)

Thus, the petitioner was asked not once but twice whether he understood that in pleading guilty he was waiving his right to a grand jury indictment. In response to each question, the petitioner acknowledged that he did. It is also a mystery why the petitioner did not indicate to the judge at any point in the proceedings that he was illiterate despite ample opportunity to do so, thus undermining the credibility of his claim of illiteracy here.[2] Accordingly, the court finds no violation of the petitioner's due process rights in his wavier of indictment by grand jury and habeas relief is unwarranted.

## B. State Law Evidentiary Rulings

The petitioner challenges two separate evidentiary determinations made by the trial court. Specifically, the petitioner contends that his constitutional right to a fair trial was violated when the trial court (1) permitted the use of evidence of prior convictions to impeach the petitioner if he testified, and (2) admitted certain testimony over the petitioner's hearsay objections.

___

[2]Even if communicated at that time, the petitioner's claim of illiteracy would probably have had little bearing on the propriety of his waiver. *Cf. Lebron v. United States*, No. 06 Civ. 5049, 2007 WL 1159646, at *7 (S.D.N.Y. Apr. 18, 2007) ("Lebron's purported lack of education and illiteracy did not render him incompetent to plead guilty, in light of his affirmation that he understood the charges against him and his counsel's statement that she had read both the indictment and the Plea Agreement to him.") (citation omitted).

As a general matter, challenges to state court evidentiary determinations, insofar as they seek to relitigate a matter of state law, are not cognizable on habeas review.  The Supreme Court in *Estelle v. McGuire*, 502 U.S. at 67-68, also considering a state law evidentiary issue in the federal habeas context, spoke directly to this: "[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Rather, the court's role here is limited to determining whether the petitioner's conviction was secured in violation of federal constitutional or statutory law.  *Id.* at 68 (citations omitted).  In the context of a challenge to state court evidentiary rulings then, habeas relief is available "only where the petitioner 'can show that the error deprived [him] of a *fundamentally fair* trial.' " *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988)).  Neither of the evidentiary issues underlying the habeas claims here come close to satisfying this standard.

### 1. Impeachment by Prior Convictions

The petitioner first argues that he was denied a fair trial when the trial court ruled, pursuant to *People v. Sandoval*, 34 N.Y.2d 371 (1974), that, if the petitioner testified, the prosecution could impeach him by eliciting factual details concerning two prior convictions. The impropriety, according to the petitioner, resides in the chilling effect the ruling had on the petitioner's decision to testify on his own behalf in addition to the prejudicial effect evidence of his prior convictions would have had on the jury.  These allegations are meritless.  Since the petitioner never took the stand at trial, evidence of his prior convictions never reached the jury, therefore rendering his allegation of undue prejudice purely hypothetical and unreviewable here.

Furthermore, evidence of the petitioner's guilt was overwhelming, and his prior convictions, even if presented to the jury, would not have made a difference in the outcome at trial.

As to the first point, the law in this circuit, and indeed among all federal courts, is clear that a criminal defendant generally cannot challenge, post-conviction, a trial court's decision to permit impeachment by prior conviction if the defendant does not take the stand at trial. As the Supreme Court held in *Luce v. United States*, 469 U.S. 38, 43 (1984), "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify."[3] Without the defendant's testimony, the Court reasoned, "[a]ny possible harm flowing from a district court's *in limine* ruling permitting impeachment by a prior conviction is wholly speculative." *Luce*, 469 U.S. at 41. For example, depending on how the case develops, the trial court may alter its ruling; also, in the absence of the defendant's testimony, "a reviewing court . . . has no way of knowing whether the [prosecution] would have sought to impeach with the prior conviction"; indeed, the prosecution may very well decide not to because it has a sufficiently strong case and has perhaps impeached the defendant through other evidence. *Id*. at 41-42.

---

[3]While *Luce* differs from the instant matter in procedural and substantive senses – in *Luce* the issue arose on direct appeal rather than habeas review and dealt with the federal rather than state rules of evidence – courts in this circuit have applied the *Luce* principle to cases mirroring the one presently before the court. *See, e.g.*, *Goston v. Rivera*, 462 F. Supp. 2d 383, 391 (W.D.N.Y. 2006) ("Although the present case involves the collateral review of a state trial court's *Sandoval* ruling and *Luce* involved the direct review by a Circuit Court of Appeals of a federal trial court's ruling pursuant to Rule 609 of the Federal Rules of Evidence, the rationale of *Luce* is equally apposite."); *Brathwaite v. Duncan*, 271 F. Supp. 2d 400, 401 (E.D.N.Y. 2003) (Weinstein, J.) (rejecting *Sandoval* claim on habeas review because of the petitioner's failure to testify, relying on *Luce*); *Grace v. Artuz*, 258 F. Supp. 2d 162, 171-72 (E.D.N.Y. 2003) (same); *Brown v. People of State of New York*, No. 02 Civ. 5731, 2003 WL 660828, at *5 (S.D.N.Y. Feb. 28, 2003) (same); *Carroll v. Hoke*, 695 F. Supp. 1435, 1440 (E.D.N.Y. 1988) (same), *aff'd mem.*, 880 F.2d 1318 (2d Cir. 1989).

There is no dispute that the petitioner did not take the stand at trial and thus is precluded from challenging the trial court's *Sandoval* ruling on habeas review.[4]

In any event, the evidence of guilt was overwhelming and details of the petitioner's prior convictions, even if admitted, would not have denied the petitioner a fundamentally fair trial – that is, the petitioner would have been convicted despite the admission of such evidence. *See Cabassa v. Filion*, No. 03 Civ. 2920, 2004 WL 1367503, at *9 (S.D.N.Y. June, 16, 2004) ("Even assuming the trial court in this case erred under *Sandoval*, the error did not deprive petitioner of a fair trial."). A neighbor of the complainant, Rosemary Ganesh, testified at trial that she saw the petitioner exit Ganesh's apartment through a broken window and run past her carrying a blue bag belonging to Ganesh. The record further reflects that the neighbor gave chase, yelling "thief." The petitioner, still in possession of the blue bag, was eventually apprehended by two sanitation workers who were removing garbage nearby. Upon being subdued, the petitioner asked the workers to release him now that they "ha[d] the bag." (Trial Tr. 463:3-8.) A police officer eventually arrived at the scene and arrested the petitioner, recovering the blue bag in the process. Upon a search of the petitioner as well as the blue bag, various items belonging to Ganesh were recovered. The court therefore finds no likelihood that the petitioner's right to a fundamentally fair trial would have been violated had evidence of his prior convictions been introduced.

---

[4]Although, as the *Luce* court acknowledged in passing, there may be situations where a claim of improper impeachment by prior conviction may be reviewable on appeal even if the defendant does not testify, this is not one of them. *See id.* at 42; *cf. Biller v. Lopes*, 834 F.2d 41, 43-44 (2nd Cir. 1987). The scenario here is no different from the one confronted and dismissed by the *Luce* court where the petitioner sought review of a "preliminary ruling on a question not reaching constitutional dimensions," *id.* at 42-43; in *Luce* it was the trial court's ruling under Rule 609(a) of the Federal Rules of Evidence, here, it is a ruling under *Sandoval*, both of which involve balancing the probative value of the prior crimes evidence against its prejudicial effect.

## 2.      Hearsay

The petitioner next argues that he was deprived of his due process right to a fair trial when the trial court admitted testimony concerning conversations between the victim and the arresting officer over various hearsay objections by his trial attorney.  This claim is meritless.

It bears repeating that this court is not the proper forum for rehashing issues of state law that had already been resolved in state court.  There is no question that "[e]videntiary rulings, such as the admissibility of hearsay, are decisions based on state law," and thus not cognizable on habeas review.  *Martinez v. Artuz*, No. 99 CIV. 12280, 2002 WL 1000287, at *4 (S.D.N.Y. May 13, 2002) (citations omitted).

To the extent the petitioner argues that the hearsay rulings somehow violated his constitutional right to a fair trial, such claim is without merit.[5]  On direct examination, Ganesh testified to conversations she had with an Officer Dibitonto at the police precinct where she had been taken for purposes of identifying and reclaiming items found missing from her home.  This testimony was objected to by counsel for the petitioner as impermissible hearsay; on appeal, it was argued further that the prosecution sought to elicit this testimony for the purpose  –

---

[5]The same goes for any argument that the petitioner's constitutional rights under the Confrontation Clause, as interpreted by the Supreme Court in *Crawford v. Washington*, 541 U.S. 36 (2005) and its progeny, were violated.  The law is clear in this circuit that "the holding of *Crawford* is irrelevant to [the] review of [a] state courts' analysis of a habeas petitioner's claim on the merits [when] the petitioner's conviction became final prior to the date of that ruling."  *Howard v. Walker*, 406 F.3d 114, 123 (2d Cir. 2005) (citation omitted).  Here, of course, *Crawford* had not been decided at the time the state courts rejected the same hearsay claim on its merits, and thus offers no basis for habeas relief here.  In any event, the petitioner's rights under the Confrontation Clause were not, at any point, placed in jeopardy; both declarants, i.e., those who made the out-of-court statements subject to the hearsay objections, testified at trial and were subject to cross-examination by counsel. *Cf. Washington v. Davis*, 126 S.Ct. 2266, 2273 (2006) ("In *Crawford v. Washington* . . . we held that [the Confrontation Clause] bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.' ") (citation omitted).

purportedly improper under state evidentiary law – of proving ownership (by Ganesh). Even assuming, for the moment, that the petitioner is right and the testimony was indeed impermissible hearsay for the reason asserted by the petitioner, habeas relief is unwarranted. Other than the testimony at issue, ample evidence for which no objection was made went to exactly the same point – that items recovered from the petitioner after his arrest belonged to Ganesh. Most significantly, Officer Dibitonto testified himself about the jewelry and other items found in the petitioner's possession when he was arrested. (*See* Trial Tr. 569:7 - 579:18.) He further testified that various of those items were displayed to Ganesh at the precinct and some were returned to her, without referring to the substance of the conversation they had. (*Id.*) Ganesh testified that she visited the precinct and saw the items shown to her by Dibitonto, and recognized them to be hers. It therefore cannot be said that the admission of the testimony at issue deprived the petitioner of a fundamentally fair trial as ownership was proven through other evidence. Accordingly, the hearsay evidentiary claim is rejected.

### C.     Prosecutorial Misconduct

In his next claim, the petitioner argues that various instances of misconduct by the prosecutor denied him due process. This claim is meritless.

On habeas review, prosecutorial misconduct warrants relief only when it amounts to a due process violation, which, this circuit has emphasized, is a high standard to overcome. *See Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998). Thus, to constitute a deprivation of due process, the petitioner must show that the prosecutor's misconduct caused him "substantial prejudice" by "'so infecting the trial with unfairness as to make the resulting conviction a denial of due process.'" *See United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) (quoting *Darden*

*v. Wainwright*, 477 U.S. at 181 (1986)); *see also United States v. Elias,* 285 F.3d 183, 190 (2d Cir. 2002).

In deciding whether a defendant has suffered prejudice of due process proportions as a result of prosecutorial misconduct, courts have considered, "(1) the severity of the misconduct; (2) the measures adopted to cure the misconduct; (3) and the certainty of conviction absent the improper statements." *See Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990) (quoting *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam)) (internal quotation marks omitted); *accord United States v. Parker*, 903 F.2d 91, 98 (2d Cir. 1990).

### 1. Prosecutor's "Third Lawyer" Statement During *Voir Dire*

The petitioner first takes issue with the prosecutor's comments, made in open court during *voir dire*, that the petitioner was being represented by his "third lawyer." This comment, however, came only after an outburst by the petitioner in which he complained, "I need a get a paid lawyer who is paid to help me in my case, not trip me up." (Voir Dire Tr. 40:16-17, Mar. 29, 2000.) At that point, the petitioner had already disrupted the proceedings several times with a similar complaint that he could not get along with his lawyer and the prosecutor made the "third lawyer" comment in the context of a lengthier statement: "We realize the Court instructed the defendant not to speak. This is the third lawyer on this case. He's likely to pollute the panel. I am asking the Court to instruct him not to speak." (*Id.* at 41:13-16.) Thus, contrary to the petitioner's assertion, the "third lawyer" statement was not without justification; it was clearly directed at the court and intended to underscore the gravity of the situation, i.e., that the petitioner would likely continue his disruptions and, more importantly, jeopardize the viability of the proceedings, if the judge did not instruct him to stop. It cannot be said then that the "third

lawyer" comment amounted to misconduct at all, much less "severe" misconduct. *Cf. Floyd*, 907

F.2d at 355 ("First, the prosecutorial misconduct here was severe, as demonstrated by the studied

pattern of improper remarks throughout the prosecutor's truncated initial summation and her

expansive rebuttal . . . .").

Of course, as the Supreme Court has emphasized, "the touchstone of due process analysis

in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the

prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The court must therefore examine the

prejudicial effect, if any, the comments at issue had on the jury. *Floyd*, 907 F.2d at 355 ("It is

not enough . . . that the prosecutor's remarks were improper; rather . . . constitutional error

occurs only when the prosecutorial remarks were so prejudicial that they rendered the trial in

question fundamentally unfair.") (citation and internal quotation marks omitted). It is clear from

the record that the jurors focused less on the prosecutor's "third lawyer" comment than on the

petitioner's outburst. Indeed, in response to questioning by the prosecutor and counsel for the

petitioner, only one among a handful of prospective jurors who voiced concerns about the

incident said he was troubled about the disclosure that the petitioner had two previous attorneys.

The trial court recognized this when it denied the petitioner's motion for a mistrial based on the

outburst and prosecutor's comments, and also reminded counsel for the petitioner that she had

been given an opportunity to explore the issue of prejudice among the prospective jurors, which,

in the words of the trial judge, she did "in a very capable manner." (Voir Dire Tr. 79:10.)[6] The

_____

[6]The prosecutor was also given an opportunity to explore the issue further with the prospective jurors and eventually consented to having four dismissed for cause. (*See id.* at 80:3-8.) While it is unclear how many of these prospective jurors were eventually dismissed, only three prospective jurors from the fourteen-member panel remained after all challenges for cause and peremptory challenges had been exercised for that round. (*See* Trial Tr. 86:24-25.) One of those jurors remaining, Mr. Schuler, was among the group of four that voiced concerns concerning the petitioner's outburst and prosecutor's

-17-

court is therefore satisfied that the prosecutor's "third lawyer" comment had little, if any, prejudicial effect, and that any such effect would have been cured.

No less important, the court, as it has indicated above, finds the evidence of guilt overwhelming; a conviction was a near certainty given the strength of the evidence regardless of any allegedly improper comment by the prosecutor. In short, none of the three *Floyd* factors weigh in favor of the petitioner insofar as the prosecutorial misconduct claim is predicated on the "third lawyer" statement.

## 2. Improper Opening and Closing Remarks

The petitioner takes issue with various remarks made by the prosecutor during opening and closing statements. In one line of argument, the petitioner contends that the prosecutor, on summation, improperly vouched for the credibility of witnesses, in another, the prosecutor is said to have improperly referenced a grand jury proceeding in his opening statements. Both grounds are meritless.

The court deals first with the vouching argument. While it is indeed improper for prosecutors "to vouch for their witnesses' truthfulness" on summation, *see Modica*, 663 F.2d at 1179, the law is equally clear that, on habeas review, the prosecutor's closing remarks do not amount to a denial of due process unless they constitute " 'egregious misconduct,' " *Shareef*, 190 F.3d at 78 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647-48 (1974)). Here, no such violation of the petitioner's due process rights took place.

---

response. In response to the prosecutor's inquiry, however, Mr. Schuler asserted that he would be able to disregard the petitioner's outburst if instructed to do so by the judge and did not sympathize with the petitioner because of what transpired. (*See* Voir Dire Tr. 75:19-76:1, 77:8-17.)

The record is simply devoid of any indication that the prosecutor improperly vouched for the credibility of witnesses. All of the statements the petitioner points to as improper vouching are, rather, arguments regarding credibility commonly employed by litigators. For example, on summation, the prosecutor asked the jury in rhetorical fashion whether witnesses had a motive to lie, but did not go so far as to argue that the state would not have used the witnesses if they were believed to be non-credible; nor did the prosecutor imply some private knowledge to confirm the witnesses' statements. *See Modica*, 663 F.2d at 1179. This use of rhetorical questions has been likened to making a "generic statement which would be understood as asking the jury to apply common sense," and held to be permissible. *See United States v. Anderson*, 303 F.3d 847, 856 (7th Cir. 2002). Simply put, there is nothing improper in arguing the credibility of witnesses, which is all that the record reflects.

As to the argument that the prosecution acted improperly in referring to grand jury proceedings in his opening remarks, this contention is without merit. The grand jury references came in the context of explaining to the jurors the charges that had been filed against the petitioner, the elements of which the prosecutor obviously sought to prove at trial. (Trial Tr. 354:22-356:15.) While it may have been poor conduct to repeatedly reference the grand jury before introducing each charge, the mere mention of a grand jury was not improper. *Cf. People v. Kurtz*, 51 N.Y.2d 380, 383 (1980) ("[A]t a minimum the prosecutor [in his opening statement] generally should set forth the nature of the charge against the accused and state briefly the facts he expects to prove . . . .") (citations omitted). Thus, the trial judge, upon objection from counsel for the petitioner, appropriately ruled that "[t]he grand jury proceeding is certainly appropriate for him [the prosecutor] to go into," instructing the jurors that "The Grand Jury is a party that

-19-

listens to evidence and decide [sic] whether there is enough evidence to accuse or charge him with a crime . . . ." (Trial Tr. 354:16-21.) This instruction was repeated by the trial judge in the jury charge: "an indictment is simply an accusation required by the law solely for the purpose of informing the defendant of the offenses with which he is charged. It is not evidence of anything." (*Id.* at 768:2-8.) Thus, even if the prosecutor's grand jury remarks were improper, any prejudicial effect they had upon the jury would have been cured.

Finally, the petitioner, in both of his arguments concerning the prosecutor's opening and closing remarks, has failed to show prejudice of constitutional proportions. As noted previously, the evidence of guilt was overwhelming, and even if the prosecution erred, those errors did not have a " 'substantial and injurious effect or influence in determining the jury's verdict.' " *Cooper v. Costello*, No. 93-CV-5670, 1996 WL 1088929, at *5 (E.D.N.Y. July 23, 1996) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 639 (1993)).

### 3. Other Statements and Conduct By the Prosecutor

The petitioner's last argument in support of his prosecutorial misconduct claim is that the prosecutor acted improperly when he laughed and slammed papers down during defense counsel's cross-examination of a witness. This argument is meritless.

It was without question undesirable and unprofessional for the prosecutor to laugh out loud during the questioning of a witness. However, after counsel for the petitioner and the witness asked the prosecutor not to laugh - a request the prosecutor complied with – the trial moved on without similar incident. (Trial Tr. 486:3-22.) When the prosecutor slammed papers down at another point in trial, he was admonished for doing so by the trial judge, and the trial again resumed without further interruption. (*Id*. at 656:3-10.) Thus, the trial court's seemingly

-20-

deft attention to the prosecutor's questionable conduct cured any harm that it might have caused to the petitioner's detriment. Moreover, as a representative of the government who is held to higher ethical standards, it may have been the prosecution instead of the petitioner that was prejudiced by the conduct at issue. In any event, there is nothing in the record to indicate that the prosecutor's actions denied the petitioner a fundamentally fair trial. Habeas relief is therefore not warranted.

In sum and for the reasons stated above, the court denies the petitioner's prosecutorial misconduct claim in its entirety since he has failed to show that the conduct at issue was either improper or, if improper, prejudicial such that he was denied a fundamentally fair trial.

### D.   Ineffective Assistance of Counsel

The petitioner's final claim for habeas relief is that he received ineffective assistance of counsel in violation of his constitutional rights when his attorney "did not merely engage in losing tactics but mounted no defense at all." (*See* Pet. ¶ 8(d)(v).) This argument, it appears, is directed primarily at counsel's conduct in pretrial proceedings, particularly the grand jury phase. In particular, the petitioner takes issue with his attorney's failure to make various pretrial motions challenging, among other things, the absence of evidence to support the value of items stolen by the petitioner and the testimony by the arresting officer that the petitioner was found in possession of marijuana at the time of his arrest. The failure to make these arguments, the petitioner asserts, resulted in charges that otherwise would not have been filed against him – namely, a higher-level burglary charge and marijuana possession.

The Sixth Amendment requires that a criminal defendant have effective assistance of counsel for his or her defense. *Strickland v. Washington,* 466 U.S. 668, 686 (1984) (quoting

*McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).  The benchmark for judging

effectiveness of counsel is whether counsel's conduct undermined the proper functioning of the

adversarial process to the point that the trial cannot be relied on as having produced a just result.

*Id.* at 686.  To prevail on an ineffective assistance claim, the petitioner must establish (1) that

counsel's representation fell below an objective standard of reasonableness measured by

prevailing professional norms, and (2) that there is a reasonable probability that but for counsel's

errors the result of the proceeding would have been different.  *Id.* at 688-694; *see also United*

*States v. Eyman,* 313 F.3d 741, 743 (2d Cir. 2002).  As the Second Circuit has observed, "the

*Strickland* standard is rigorous, and the great majority of habeas petitions that allege

constitutionally ineffective counsel founder on that standard."  *Lindstadt v. Keane,* 239 F.3d 191,

199 (2d Cir. 2001).

 In evaluating the performance prong of *Strickland,* the court is mindful of Justice

O'Connor's admonition that "it is all too tempting for a defendant to second-guess counsel's

assistance after conviction or adverse sentence, and it is all too easy for a court, examining

counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission

of counsel was unreasonable." *Strickland*, 466 U.S. at 689.  Thus, the court adopts a strong

presumption that counsel's conduct falls within the range of reasonable professional norms, and

that counsel's alleged deficiencies were not the result of error, but instead reflect strategic

decisions made by counsel during trial.  *Id.* at 689.

 In evaluating the prejudice prong of *Strickland,* the court must determine whether the

petitioner has shown prejudice of constitutional proportions, which, as recognized in this circuit,

"lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than

not altered the outcome in the case.' " *Lindstat*, 239 F.3d at 204.  The court considers the

prejudicial effect of not one or another of the errors alleged by the petitioner, but measures the

cumulative weight of error to determine whether the prejudice reaches the constitutional

threshold warranting habeas relief.[7]  *Id.* at 198-99.

In this case, the petitioner fails to satisfy the two-prong "deficient performance and

prejudice" test of *Strickland*.  First, as to deficient performance, the petitioner cannot show that

counsel's performance was deficient, thereby violating his Sixth Amendment right to counsel.

As noted above, the petitioner focuses specifically on his attorney's failure to challenge the

sufficiency of evidence presented before the grand jury, a failure which, he argues, resulted in

charges that otherwise would not have been filed – namely, marijuana possession and a higher-

level burglary charge.  As to the former charge, it is argued that counsel should have challenged

the officer's testimony regarding his seizure of marijuana that was found in the petitioner's

possession upon arrest, as to the latter, the value of the property recovered from the petitioner's

possession.  The petitioner, however, has failed to sufficiently rebut the presumption that his

attorney pursued a sound strategy decision in deciding not to contest the propriety of grand jury

proceedings.  Such arguments are rarely, if ever, a basis for relief, since the threshold for

indictment, probable cause, is low and evidentiary rules are relaxed in grand jury proceedings.

The secret nature of the proceedings also compounds the difficulty of crafting a cogent

argument.  Furthermore, the petitioner has failed to show that it was deficient performance to

wait until trial to contest the bases for the two charges.  Indeed, counsel for the petitioner was

---

[7]The performance and prejudice prongs may be addressed in either order, and if it is apparent that an ineffectiveness claim must be disposed on the ground of a lack of sufficient prejudice, that course should be followed.  *Strickland,* 466 U.S. at 697.  Thus, if a petitioner fails to satisfy the prejudice prong of *Strickland,* it is unnecessary to consider the performance prong.  *Id.*

able to have the possession of marijuana charge dismissed after raising issue with the jury charge that had been issued with respect to that offense. (Trial Tr. 835:5-12, 837:11-19.) Accordingly, the petitioner has failed to satisfy the first prong of *Strickland*, thus foreclosing habeas relief.

Nor could the petitioner show that he was prejudiced by counsel's allegedly deficient performance. The charge of marijuana possession, as indicated above, was dismissed and therefore had no influence on the final jury verdict. (*Id.* at 837:11-19.) As to the burglary offense, the jury was presented with evidence at trial that the petitioner was arrested in possession of the stolen goods and Ganesh, the complainant, testified as to their value. Counsel for the petitioner had an opportunity to challenge the testimony as to value (*see id.* at 402:7-406:24, 451:11-454:13). Simply put, there is simply nothing to indicate that any of the claimed deficiencies in counsel's performance had any impact on the trial or the jury's verdict.

As there is no showing of either deficient performance or prejudice, habeas relief is not warranted as to ineffective assistance claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied in its entirety.

**SO ORDERED:**

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:      Brooklyn, New York
             May 24, 2007